## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**JOEL C. ADAMS,**

      **Plaintiff,**

**v.**

                                      **Case No. 3:07cv310/MCR/EMT**

**VULCAN ENERGY SOLUTIONS, LLC;**
**VULCAN ADVANCED MOBILE POWER SYSTEMS, LLC;**
**VULCAN AMPS, LLC;**
**VULCAN POWER GROUP, LLC;**
**TEXAS MPOWER SYSTEMS, LLC;**
**and**
**VULCAN POWER SOLUTIONS, LLC,**

      **Defendants.**

_____/

## O R D E R

      This breach of contract action is before the court on the motion for summary judgment filed by plaintiff Joel C. Adams ("Adams"), who seeks judgment in his favor both on his first amended complaint and on defendants' amended counterclaim.[1] Defendants Vulcan Energy Solutions, LLC; Vulcan Advanced Mobile Power Systems, LLC; Vulcan Amps, LLC; Vulcan Power Group, LLC; Texas Mpower Systems, LLC; and Vulcan Power Solutions, LLC (together, "Vulcan" or "defendants") have responded.  For the reasons given below, the court DENIES Adams' motion.

---

      [1] Plaintiff initiated this case in the Circuit Court of the First Judicial Circuit in and for Escambia County, Florida.  Defendants removed the action to this forum on July 24, 2007.

**Background**

The following facts are recited in the light most favorable to the defendants as the nonmovants or, except as noted, are undisputed.[2]  Adams was formerly employed by or performed subcontract services for Vulcan, which through its several companies provides power generation and power plant services worldwide.  According to Adams, in the past Vulcan suffered cash flow problems which caused it to have difficulty making its payroll, including  paying him for work he performed for Vulcan in Mulla Abdulla, Iraq.  Prior to the initiation of the instant dispute Adams brought suit against Vulcan seeking to obtain payment for this work; Vulcan subsequently also sued Adams for breach of the parties' non-disclosure/non-competition agreement.   In January 2007, during the course of its claims against Adams, Vulcan treasurer Grover Scott Campbell ("Campbell") traveled to Pensacola, Florida, to attend Adams' deposition as Vulcan's representative.

At the time of Adams January 2007 deposition, Vulcan was also engaged in a multi-million dollar dispute with the Ministry of Electricity of the Republic of Iraq ("MERI").  In the MERI dispute Vulcan asserted that MERI had breached the parties' Mulla Abdulla power plant contract by failing to make payments to Vulcan; MERI asserted that Vulcan had improperly procured the contract and failed to perform.  An arbitration proceeding was scheduled in the matter for February 2007.  In preparation for that arbitration proceeding, attorneys for the law firm representing MERI had drafted several witness statements for Adams' signature, which Adams had signed.  One of the statements contained allegations by Adams that Vulcan was involved with a bribery and kickback scheme regarding the Mulla Abdulla project.

At the time of Adams' January 2007 deposition in Pensacola, the parties also participated in settlement discussions, which resulted in the resolution of their differences

---

[2]  At summary judgment this court must view the facts in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

and the execution of a written, confidential settlement agreement.[3]  Adams, for himself, and Campbell, on Vulcan's behalf, signed the January 11, 2007, agreement.  As set forth in the agreement, one reason that Adams agreed to the terms of the settlement was that the MERI attorneys had misled him with respect to the witness statements he had signed. According to recitations contained in the agreement, MERI's attorneys never provided the complete witness statements with exhibits to Adams and he was not able to review the statements in their entirety before they were submitted to the MERI arbitration tribunal. Also, the agreement states that Adams, who did not consult with counsel prior to signing the witness statements, was not aware which exhibits would be attached to his statements or that such exhibits would include documents MERI's counsel had received from Adams or other sources.  The settlement agreement states that Adams did not learn of those facts until Vulcan filed its complaint against him for violation of the non-disclosure agreement. It was only at that time that Adams realized the witness statements prepared by MERI's attorneys unfairly constructed his account of events and provided an inaccurate portrayal of his knowledge of facts relevant to the MERI arbitration.

Pursuant to the terms of the settlement agreement Adams agreed that, through truthful sworn testimony,  he would (1) acknowledge and reaffirm statements he had made in an e-mail that MERI had breached its agreement with Vulcan; (2) fully disclose, to the best of his ability, any discussions he had had with MERI and/or its attorneys concerning Vulcan's arbitration with MERI; (3) clarify and correct information contained in his signed statements previously submitted in the MERI arbitration; and (4) acknowledge and confirm Vulcan's efforts to mobilize in Iraq with respect to the Mulla Abdulla power plant project. Additionally, Adams agreed to provide Vulcan with access to a certain e-mail account and to request in writing that his prior statements in the MERI arbitration be withdrawn.[4]  The agreement also calls for the parties to later execute a joint motion seeking entry of an agreed permanent injunction and final judgment.  For its part, under the terms of the

---

[3]  Doc. 9, exh. A.

[4]  Of the stated conditions, whether Adams fully satisfied his obligation to fully disclose any discussions he had with MERI and/or its attorneys concerning Vulcan's arbitration with MERI is primarily at issue in this case.

agreement, Vulcan agreed to pay Adams $140,000 for settlement of his claims against it, with $35,000 to be paid initially and $8,750 to be paid monthly for twelve months beginning February 20, 2007.

Immediately after signing the settlement agreement on January 11, 2007, Adams was deposed, as provided in the agreement. Campbell was in attendance. When questioned about the witness statements, Adams indicated that at the time he signed them he was unaware of their potential importance to the MERI arbitration. Inter alia, in his deposition Adams denied drafting the language that referred to Vulcan's taking part in an illegal bribe or kickback arrangement; he also indicated that any fee involved with respect to certain engineering services would have been for legitimate work performed.  In response to a query as to whether he had informed MERI's attorneys that an illegal engineering agreement existed that Vulcan was trying to hide, Adams responded, "I don't recall."[5]  On January 18, 2007, Vulcan paid Adams the initial $35,000 payment, as provided under the agreement.  In February 2007 and March 2007 Vulcan also paid Adams two $8,750 installments.  The MERI arbitration was conducted in February 2007, and the arbitration tribunal rendered a decision unfavorable to Vulcan some time between March 20, 2007, and April 20, 2007.  Following the March 20, 2007, remittance Vulcan made no further payments to Adams.

In his amended complaint, Adams asserts that he fully satisfied his obligations under the settlement agreement but that Vulcan breached the agreement by failing to pay him in full.  Vulcan counterclaims that it was not required to pay Adams because he breached the agreement by failing to testify truthfully in his January 11, 2007, deposition.

**Legal Standards**

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  An issue is genuine when "the evidence is such

[5]  Doc. 43, exh. B at pp. 26-27

that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it might affect the outcome of the case under the substantive law. Id.  In deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from it in the light most favorable to the nonmoving party. Carter v. Miami, 870 F.2d 578, 581 (11th Cir. 1989). A party opposing summary judgment must, however, present evidence upon which a jury could proceed to determine a verdict for that party. See Anderson, 477 U.S. at 251. Credibility determinations and the weighing of evidence are functions of the jury. Anderson, 477 U.S. 242, 255 (1986).

In order to prevail on a claim for breach of contract under Florida law, a party must prove the existence of a contract, a material breach, and damages.  See, e.g., Knowles v. C.I.T. Corp., 346 So. 2d 1042, 1043 (Fla. 1st DCA 1977); Mettler, Inc. v. Ellen Tracy, Inc., 648 So. 2d 253, 255 (Fla. 2d DCA 1994); AIB Mortgage Co. v. Sweeney, 687 So. 2d 68, 69 (Fla. 3d DCA 1997); J.J. Gumberg Co. v. Janis Servs., 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003); Abbott Labs., Inc. v. General Electric Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000).  A party complaining of a  breach must show that it performed its contractual obligations before it may recover on the contract. Marshall Constr. Ltd. v. Coastal Sheet Metal & Roofing, Inc., 569 So. 2d 845, 848 (Fla. 1st DCA 1990).  If one party commits a material breach of the contract, the other party may consider its duties under the contract discharged. See id; Nacoochee Corp. v. Pickett, 948 So. 2d 26, 30 (Fla. 1st DCA 2006).

**Discussion**

The parties agree that the critical issue in this case is whether Adams provided truthful testimony at his January 11, 2007, deposition and thus whether he complied with the terms of the parties' settlement agreement.  Adams contends that his testimony was truthful, and Vulcan contends that it was not.  According to Adams, only he and Campbell have actual personal knowledge of the truthfulness of his testimony and both have stated that Adams' testimony was truthful.[6]  Adams submits that there is no admissible evidence

---

[6]  Adams further argues that not only has Vulcan failed to identify any witness with personal knowledge of any alleged breach but also it has failed to identify with any specificity the nature of the breach.

that he breached the settlement agreement and thus he is entitled to summary judgment on Vulcan's counterclaim.  Additionally, Adams contends, because there is record evidence that shows he provided sworn testimony at the deposition on all subjects required of him and that he did not refuse to answer any questions or otherwise fail to comply with the terms of the settlement agreement, the court should also enter judgment in his favor on his breach of contract claim.  Vulcan responds that Adams has incompletely or incorrectly summarized Campbell's testimony.  Furthermore, according to Vulcan Campbell's actual testimony, as well as evidence and testimony from Adams himself and Vulcan's counsel Rick L. Lambert ("Lambert"), demonstrates that genuine issues of fact exist for trial.  More specifically, Vulcan contends that Adams' statement in his January 2007 deposition that he did not recall telling MERI's attorneys that Vulcan had engaged in a bribery and kickback scheme patently lacks credibility.  According to Vulcan, it is simply not believable that in January 2007 Adams could not recall whether he had given this information to the MERI attorneys yet, at another deposition taken in December 2007, he could recall these events competently and with some detail.[7]

As stated in his affidavit, Adams maintains that he provided truthful sworn testimony to the best of his ability at his January 11, 2007, deposition.  Additionally, as Adams submits, Campbell's testimony shows that he thought Adams had performed his obligations under the agreement and that Campbell was unable to identify specifically how Adams' testimony at his January 11, 2007, deposition might have been untruthful.  As Vulcan argues, however, Campbell also testified that he did not know all of the facts of the case at the time Adams was being deposed on January 11, 2007, and that his opinion that Adams had performed his obligations under the agreement was valid only as of the date of Adams' deposition, before other information became known to Vulcan.

---

[7]  Vulcan contends that Adams' conflicting testimony significantly impacted its credibility in the eyes of the arbitration tribunal and placed his statements regarding bribery at the forefront of the proceedings. Vulcan submits it was unable to recover from the effects of Adams' testimony and ultimately it was unable to prevail on its contract claim against MERI.  Additionally, according to Vulcan, had Adams disclosed to it on January 11, 2007, the document that he had previously drafted and provided to the MERI attorneys, Vulcan would have been prepared to address the document and thereby avoided the "negative aspersions its surprise revelation cast upon them" during the arbitration proceedings.  Doc. 50 at 6.

Additionally, as noted, the record reflects that during the January 11, 2007, deposition Adams testified that he did not recall talking to the MERI attorneys about a bribery and kickback scheme involving Vulcan.  In his deposition taken December 7, 2007, however, although his testimony was at times equivocal, Adams seems to acknowledge he informed MERI's attorneys during a meeting in New York City attended by MERI attorney Andrew Weaver that Vulcan had been involved in an alleged bribe or kickback scheme regarding the Mulla Abdulla project.[8]  Adams also apparently acknowledged he personally drafted and provided to the MERI attorneys a document that discussed the alleged scheme involving Vulcan.[9]  At the time of the January 11, 2007, deposition and settlement, Adams did not disclose the existence of the document he had written nor did he provide a copy of it to Vulcan.  Moreover, Lambert testified that it was only during the arbitration proceedings that he realized that Adams had not been truthful in his January 2007 deposition testimony regarding the information he had provided in the MERI arbitration, and thus had not met his obligations under the settlement agreement.  According to Lambert, it was at that time that the MERI attorneys provided him with information and documentation about Adams' statements to them.

Vulcan does not dispute that it stopped paying Adams per the settlement agreement, conduct that presumably would constitute a breach if Vulcan were not excused from performing on the contract.  Vulcan, however, proffers evidence that – if believed by a jury – suggests that Adams did not fulfill the requirements of the settlement agreement because he did not provide truthful testimony in his January 2007 deposition regarding what information he related to the MERI attorneys, thus excusing Vulcan's failure to perform. Nacoochee Corp., 948 So. 2d at 30.  Based on the evidence discussed above, the court readily concludes that genuine issues of material fact exist with respect to whether Adams' testimony at his January 11, 2007, deposition was truthful, as he submits, or untruthful, as Vulcan submits.  Because the parties have presented conflicting testimony which a jury must evaluate, summary judgment in favor of Adams must be denied.

---

[8]  Doc. 49, exh. B at pp. 19-20.

[9]  Id. at pp. 28-31, 42-43.

**Conclusion**

  For all of the reasons discussed above, the court concludes that genuine issues of material fact exist that preclude summary judgment in favor of Adams on both his breach of contract claim and defendants' counterclaim.  The court therefore DENIES Adams' motion for summary judgment.

  Accordingly, it is ORDERED:

  Adams' motion for summary judgment (doc. 40) is DENIED.

  DONE and ORDERED this 22nd day of July, 2008.


       s/ *M. Casey Rodgers*
       **M. CASEY RODGERS**
       **UNITED STATES DISTRICT JUDGE**